19-2245-pr
*DeJesus v. Perez*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

<small>**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**</small>

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of May, two thousand twenty.

PRESENT:
> GUIDO CALABRESI,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> > *Circuit Judges.*

---

JOSHUE DEJESUS,

> *Petitioner-Appellant,*                    19-2245-pr

> v.

ADA PEREZ, Superintendent, Downstate
Correctional Facility,

> *Respondent-Appellee.*<sup>*</sup>

---

FOR PETITIONER-APPELLANT:          JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, New York.

FOR RESPONDENT-APPELLEE:          ALICE WISEMAN (Eleanor J. Ostrow, *on the brief*), Assistant District Attorneys, *for*

---

<sup>*</sup> The Clerk of Court is directed to amend the caption as set forth above.

Cyrus R. Vance, Jr., District Attorney, New York County, New York, New York.

Appeal from an order of the United States District Court for the Southern District of New York (Swain, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Petitioner Joshue DeJesus appeals from a July 9, 2019 order of the United States District Court for the Southern District of New York (Swain, *J.*), denying the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. DeJesus is serving an indeterminate term of imprisonment of 20 years to life following conviction by a jury of murder in the second degree in New York Supreme Court, New York County. DeJesus argues that the state court unreasonably applied United States Supreme Court precedent in finding that the trial testimony of certain New York City Police Department detectives did not violate his Sixth Amendment Confrontation Clause rights, and that the district court erred in concluding otherwise. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

I.    **Background**

This petition arises from the arrest and prosecution of DeJesus for the murder of Julio Montez. In the early morning of June 9, 2006, DeJesus was at a bar in Manhattan with his friends; Montez was also there with his friend Lennon Carrasco, among others. At 3:45 a.m., Montez was outside of the bar arguing with another man, when someone walked up to Montez and shot him in the chest. Carrasco initially told law enforcement that he did not see the shooting, but revised his story when he spoke to police again around 7:00 p.m. that same day. At that point, he told the detective that he saw the man who shot Montez, recognized him from the

2

neighborhood, and provided a physical description. Carrasco identified DeJesus as the shooter from a photo array around 10:00 p.m. that evening. Several months later, DeJesus voluntarily surrendered himself and Carrasco again identified him as the shooter during a lineup.

Before trial began, the state court denied the prosecution's request to admit testimony from a member of Montez's family concerning a telephone call that was received the day of the shooting. In that call, an anonymous person said that "the shooter's name is Joshua" and provided his address. App. at 123-24. The family member relayed this information to the police at approximately 4:15 p.m. on the day of the shooting. The court did not permit the prosecution to reference the phone call, but allowed the prosecution to ask the detectives if they had a suspect in mind based on their investigation, prior to the Carrasco interview. On direct examination, the detectives (including Detective Antonio Rivera) revealed that they identified DeJesus as a suspect at around 4:00 p.m., even though Carrasco did not provide a description of the shooter until approximately 7:00 p.m. that day.

## II. Discussion

### a. Standard of Review

We review *de novo* the district court's denial of a petition for a writ of habeas corpus. *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). Because DeJesus's Confrontation Clause claim was "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), *see People v. Garcia*, 25 N.Y.3d 77, 30 N.E.3d 137 (2015), we may only grant the writ under the Antiterrorism and Effective Death Penalty Act ("AEDPA") if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).

For purposes of habeas review, "clearly established Federal law" refers to holdings of the United States Supreme Court, and not an appellate court's interpretation or extension of such holding. *See Carey v. Musladin*, 549 U.S. 70, 74 (2006) ("[C]learly established Federal law . . . refers to the holdings, as opposed to the dicta, of [the *Supreme*] *Court*'s decisions as of the time of the relevant state-court decision." (emphasis added) (quotation marks omitted)); *see also Rodriguez v. Miller*, 537 F.3d 102, 109 (2d Cir. 2008) ("[I]n the past we (and other courts) occasionally have relied on our own precedents to interpret and flesh out Supreme Court decisions to decide variegated petitions as they come before us. It would appear that we can no longer do this.").

### b. The Right to Confrontation

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see Pointer v. Texas*, 380 U.S. 400, 403 (1965). In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause bars out-of-court "testimonial" statements against a criminal defendant by a witness absent from trial unless the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 68 (2004); *see also Washington v. Griffin*, 876 F.3d 395, 404 (2d Cir. 2017). Although the Supreme Court declined "to spell out a comprehensive definition of 'testimonial,'" it made clear that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68. Furthermore, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9; *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985) (holding that non-hearsay admissions do not raise "Confrontation Clause concerns").

In *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, the Supreme Court separately addressed Confrontation Clause claims in the context of out-of-court statements by non-testifying co-conspirators implicating a defendant in the charged crime. *Bruton* involved the oral confession of the defendant's co-conspirator that was admitted at their joint trial. 391 U.S. at 124. The confession, which implicated the defendant, violated the defendant's right to confrontation given that the co-conspirator did not testify. *Id.* at 128. Thereafter, in *Gray v. Maryland*, the confession of the non-testifying co-defendant was also read to the jury, but this time the defendant's name was redacted. 523 U.S. 185, 194 (1998). A detective affirmed that based on the co-defendant's confession, he "subsequently [was] able to arrest Mr. Kevin Gray." *Id.* at 188-89. Despite the redaction, the Supreme Court found a violation of the defendant's confrontation right, explaining that "the *kind* of" inference matters. *Id.* at 196. The Court distinguished between inferential statements "which became incriminating 'only when linked with other evidence introduced later at trial'" and statements which "obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.* (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).

In addition to *Bruton* and *Gray*, DeJesus relies on a Second Circuit case, *Ryan v. Miller*, 303 F.3d 231 (2d Cir. 2002). In *Ryan*, the testimony revealed that while one detective was interrogating Ryan about a murder, another detective was simultaneously interviewing one of Ryan's friends, Peter Q. *Id.* at 240. At one point, the sergeant supervising the investigation, who had just spoken with the officer interviewing Peter Q., directed the detective interviewing Ryan to read Ryan his *Miranda* rights. *Id.* On appeal, we agreed with Ryan that this sequence of events "provided the indirect link between Peter Q.'s confession and the arrest of Ryan and

5

contained an obvious accusation against Ryan." *Id.* Thus, "[b]ased on the testimony, the jury . . . had nothing to conclude except that Peter Q. implicated Ryan. Because Peter Q. did not testify, Ryan could not confront his accuser." *Id.* at 240-41. This Court concluded that "[t]estimony need not contain an explicit accusation in order to be excluded as a violation of the Confrontation Clause." *Id.* at 248.

### c. Application

On appeal, DeJesus argues that the detectives' testimony violated his right to confrontation by implying that a non-testifying individual accused petitioner of the murder before Carrasco identified him, and that the prosecutor "hammered the inference home" in her opening statement and summation. Appellant Br. at 47. We affirm the denial of the writ because the state court's rejection of DeJesus's Confrontation Clause claim was not an unreasonable application of the legal standards set forth in *Crawford*, *Bruton*, or subsequent Supreme Court holdings applying those standards.

As a threshold matter, respondent argues that *Ryan*, as a Circuit decision, is not controlling in this case because "clearly established Federal law" is only determined by Supreme Court precedent for purposes of habeas review. *See Alston v. Phillips*, 476 F. App'x 907, 909 (2d Cir. 2012) ("[T]he Supreme Court has not addressed the question" whether "'testimony that indirectly includes an accusation against the defendant may violate the Confrontation Clause even if the testimony is not a direct reiteration of the accusatory assertion.'" (quoting *Ryan*, 303 F.3d at 248)). However, *Ryan* was a habeas appeal in which this Court articulated its view of "clearly established Federal law" on a Confrontation Clause claim for purposes of habeas review. *See Ryan*, 303 F.3d at 234 ("We find that the officers' testimony constituted hearsay containing an implicit accusation against Ryan, in violation of the Confrontation Clause of the Sixth

6

Amendment, and that the state appellate court unreasonably applied clearly established Supreme Court precedent in denying Ryan's Sixth Amendment claim."). DeJesus contends that *Ryan*'s articulation of "clearly established Supreme Court precedent" is binding on future cases in this Circuit. *See id.*; *see also Gersten v. Senkowski*, 426 F.3d 588, 607 n.1 (2d Cir. 2005) (noting that district courts, on habeas review, are "bound to apply this Court's precedents governing when applications of *Strickland* are unreasonable" (quotation marks omitted)). Notwithstanding that *Ryan* itself was applying post–AEDPA Supreme Court law, respondent further contends that "[i]n a string of cases beginning with *Musladin* in 2006—thus post-dating both *Ryan* and *Gersten*—the Supreme Court has made clear that the type of extension of Supreme Court holdings exemplified by *Ryan* is impermissible." Appellee Br. at 43. Although respondent suggests that the holdings of both *Gersten* and *Ryan* have been implicitly overruled by *Musladin* and its progeny, we need not address that issue because we conclude that DeJesus's claim is not supported by the clearly established Federal law articulated in *Ryan*, and would require an extension of *Crawford* and *Bruton* that is impermissible on habeas review.

We explained in *Ryan* that, as it relates to Confrontation Clause claims involving an implicit accusation by a non-testifying witness, "[t]he relevant question is whether the way the prosecutor solicited the testimony made the source and content of the conversation clear." 303 F.3d at 250. Thus, because in *Ryan* the source of the information was identified (namely, co-perpetrator Peter Q.) and the content of information was made abundantly clear from the circumstances (namely, the arrest of Ryan immediately following the questioning of Peter Q.), we found a Confrontation Clause violation under those "particularly egregious facts." *Alston*, 476 F. App'x at 910 (discussing *Ryan*). By contrast, here, neither the source of the information nor its specific content was ever revealed to the jury during questioning by the prosecutor; rather,

the jury only learned that the police suspected DeJesus as the murderer prior to the Carrasco interview and his identification of DeJesus.[1]  Thus, *Ryan*'s standard under Supreme Court precedent for an indirect accusation to constitute a Confrontation Clause violation was not met here.[2]  No Supreme Court case has held, under its *Crawford* or *Bruton* lines of cases or in any other context, that the Confrontation Clause is violated where neither the source nor content of the information is revealed by the prosecution to the jury.  In the absence of any such precedent, DeJesus's claim under the facts of this case does not permit habeas relief.

Finally, to the extent that DeJesus argues that this case approaches *Gray* because the content of the information (namely, a second eyewitness identifying DeJesus as the shooter) was made clear by direct testimony from the prosecution's witnesses, that contention is not supported by the record.  Although the testimony here established that the detectives identified DeJesus as a suspect before Carrasco implicated him, the testimony elicited on *direct examination* did not attribute this knowledge to a specific source of information or describe its content.[3]  Instead, it

---

[1] This situation is more akin to the situation in *Quartararo v. Hanslmaier*, 186 F.3d 91 (2d Cir. 1999), which was distinguished in *Ryan*.  Like the testimony here, "the testimony [in *Quartararo*] did not make clear from whom or where [the detective] received the information, if in fact he received any information at all."  *Ryan*, 303 F.3d at 252 n.7.  Moreover, the testimony "did not contain the contemporaneous, back and forth exchanges between [the] interrogator[s] that was so evident in the questioning at Ryan's trial."  *Id*.

[2] DeJesus's reliance on *Ocampo v. Vail*, 649 F.3d 1098 (9th Cir. 2011), is similarly misplaced.  In *Ocampo*, unlike here, the detectives' testimony revealed the identity of the out-of-court declarant and established that he implicated the defendant and corroborated other details.  *See id*. at 1102-05.

[3] DeJesus further suggests that the prosecutor's opening statement already made these additional facts clear.  We disagree.  The prosecutor's passing remarks in the opening statement regarding the police investigation did not identify the source or content of any information possessed by the detectives before questioning Carrasco.  Similarly, the summation provided no more information to the jurors on that topic than had been already revealed on cross-examination of the prosecution witnesses by DeJesus's counsel.

was on *cross-examination* that defense counsel brought out substantive details about the content of the identification. In particular, in response to defense counsel's questions, Detective Rivera revealed that there was an individual who identified petitioner before Carrasco did, whereas on direct examination, the detectives merely affirmed that DeJesus was a suspect around 4:00 p.m. "as a result of [their] investigation." App. at 135. As the district court noted, "the jury could not have inferred that any statement by a non-testifying witness had been made until Petitioner's own counsel, while cross examining [D]etective Rivera, introduced the notion that some other individual had identified Petitioner at 4:00 p.m. on June 9." App. at 232. Although Detective Rivera did not speak to Carrasco at 4:00 p.m., it was still possible for the jury to infer that another detective had already received information from Carrasco at that time, based on the limited information revealed during his direct examination, or that the suspicion was a generalized one prompted by his presence at the scene or some other innocuous reason. The fact that defense counsel asked questions on cross-examination that revealed more details about the content of the information cannot be used to form the basis of a Confrontation Clause claim. *See Giles v. California*, 554 U.S. 353, 376 n.7 (2008) (observing that "the confrontation guarantee limits the evidence that the State may introduce without limiting the evidence that a defendant may introduce").

In sum, we conclude that testimony that the detectives considered DeJesus to be a suspect prior to speaking with Carrasco, without reference to the source or content of the information, is too vague an accusation to constitute a Confrontation Clause violation within the scope of the

Supreme Court's jurisprudence under *Bruton* and *Crawford*. Accordingly, we cannot say that the state court's decision was an unreasonable application of clearly established Federal law.[4]

\* \* \*

We have considered petitioner's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] We note that this conclusion should not be construed as stating any view on whether the legal principles in *Bruton* or *Crawford* could be extended to cover the situation present here. In fact, in *Ryan*, we stated that "it is well established in this Circuit that lawyers may not circumvent the Confrontation Clause by introducing [an out-of-court, accusatory statement] in a different form." *Ryan*, 303 F.3d at 248-49 (collecting cases). Instead, our analysis is limited to applying Supreme Court precedent in determining clearly established Federal law for habeas review, and DeJesus's claim fails under that deferential standard.